# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BUTTONWOOD TREE VALUE PARTNERS, L.P., a California Limited Partnership, and MITCHELL PARTNERS L.P., a California Limited Partnership, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>R. L. POLK & CO., INC., STEPHEN R. POLK (individually and on behalf of a Defendant Class of similarly situated persons), THE ESTATE OF NANCY K. POLK, KATHERINE POLK OSBORNE, DAVID COLE, RICK INATOME, CHARLES MCCLURE, J. MICHAEL MOORE, RLP & C HOLDING, INC., RLP MERGER CO., STOUT RISIUS ROSS, INC., and HONIGMAN MILLER SCHWARTZ AND COHN LLP,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 9250-VCG |

## MEMORANDUM OPINION

Date Submitted: March 17, 2022
Date Decided: June 23, 2022

R. Bruce McNew, of COOCH AND TAYLOR, P.A., Wilmington, Delaware, *Attorney for Plaintiffs*.

David A. Dorey, of BLANK ROME LLP, Wilmington, Delaware; OF COUNSEL: Christopher M. Mason, of NIXON PEABODY LLP, New York, New York, and Carolyn G. Nussbaum, of NIXON PEABODY LLP, Rochester, New York, *Attorneys for Defendants*.

**GLASSCOCK, Vice Chancellor**

1

This matter alleges that corporate fiduciaries caused a company to do a self-tender at an inadequate price, based upon misleading disclosures to stockholders. The Plaintiffs are company stockholders who tendered, or sold into the market during the tender period. This brief Memorandum Opinion addresses the Plaintiffs' request to certify both a Plaintiff class and a Defendant class. The Defendants have tenaciously opposed certification of a class, invoking presque vu in this judge.[1] For the reasons that follow, the former request is granted, insofar as the matter addresses breach of duty claims and nominal damages. The latter request to certify a Defendant class I find unsustainable under Rule 23. Both decisions are explained below.

## I. BACKGROUND

What follows is a brief adumbration of the facts necessary for this Memorandum Opinion. Curious readers should refer to my opinion resolving a motion to dismiss in this case, *Buttonwood Tree Value Partners, L.P. v. Polk & Co., Inc.*, 2017 WL 3172722 (Del. Ch. July 24, 2017), for a fuller recitation of the Plaintiffs' allegations.

---

[1] *See, e.g.*, *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 2236192 (Del. Ch. June 14, 2022).

*A. The Relevant Parties and Non-Parties*

Former Defendant R.L. Polk and Co., Inc. ("Polk" or the "Company") is a Delaware corporation with its headquarters in Michigan.[2] Founded in 1870, the Company has since been majority owned and controlled by members of the Polk family (the "Polk Family").[3] In March 2011, Polk made a tender offer to all Polk stockholders to purchase up to 37,037 shares of the Company's stock at a price of $810 in cash per share (the "Self-Tender") between March 31, 2011 and May 16, 2011 (the "Self-Tender Period").[4] Although the Company was a named defendant in this action, I dismissed it from this matter at oral argument on May 31, 2017.[5]

Plaintiff Buttonwood Tree Value Partners, L.P. ("Buttonwood") was a California limited partnership and held stock in Defendant Polk at all relevant times.[6] Buttonwood tendered 1,048 shares into the Self-Tender.[7] Buttonwood, whose owner passed away in late 2016,[8] filed a certificate of cancellation in October 2020 terminating its existence as a California limited partnership.[9] Buttonwood's

---

[2] *Buttonwood*, 2017 WL 3172722, at *1.
[3] *Id.*
[4] *Id.* at *4.
[5] *See* Oral Arg. Defs.' Mots. Dismiss Partial Rulings Ct. at 97:13–14, Dkt. No. 196.
[6] *Buttonwood*, 2017 WL 3172722, at *1.
[7] *Id.*
[8] Dep. 30(b)(6) Witness Philip Milner, Dkt. No. 307 at 16:23–25 [hereinafter "Milner Dep."].
[9] Decl. David A. Dorey Attaching Ex. Supp. Defs.' Opp. Pls.' Mot. Certification Pl. Class Def. Class, Ex. A, Dkt. No. 308 [hereinafter "Buttonwood Cert. Cancellation"].

liquidating partner has appointed Philip Milner, a former Buttonwood employee, to serve as its representative in connection with this litigation.[10]

Plaintiff Mitchell Partners L.P. ("Mitchell") is a California limited partnership that held stock in Polk at all relevant times.[11] Mitchell sold 700 shares of Polk in a private transaction during the Self-Tender Period for $811 per share.[12]

Defendant Stephen Polk was the Company's President, CEO, and the chairman of its board of directors (the "Board") during the relevant period.[13] Stephen Polk also controlled the voting power of Polk shares owned by the Polk family, with the exception of shares owned by two family members.[14] Two other Polk family members—Katherine Polk Osborne and Nancy Polk—are also members of the Polk Board and defendants in this litigation (together with Stephen Polk, the "Polk Family Directors").[15] Stephen Polk serves as a fiduciary for two Polk-related trusts, the Ralph L. and Winifred E. Polk Foundation and the Jane Polk Read Trust (the "Polk Trusts"), which together tendered 10,500 shares in the Self-Tender.[16]

---

[10] Milner Dep. at 9:3–12, 15:15–16:5.
[11] *Buttonwood*, 2017 WL 3172722, at *1.
[12] *Id.*
[13] *Id.* at *2.
[14] Decl. McNew Attaching Exs. Supp. Pls.' Mot. Certification Pl. Class Def. Class, Dkt. No. 295, Ex. 15.
[15] *Buttonwood*, 2017 WL 3172722, at *2.
[16] Second Am. Verified Class Action Compl. ¶¶ 34 n.4, 69 [hereinafter the "SAC"].

## B. Factual Background

At a high level, the Plaintiffs contend that the Self-Tender significantly undervalued Polk. The Self-Tender offered to purchase Polk stock at a price of $810 in cash per share, which valued the Company at $434.5 million.[17] But two years later, in June 2013, the Defendants allegedly conducted a freeze-out of its stockholders who were not Polk Family members, and sold the Company for $1.341 billion.[18] Polk stockholders who tendered in the Self-Tender would have received $2,675 per share in the 2013 sale—over 300% more than the $810 per share they received in the Self-Tender.[19] In addition, the former Polk stockholders who participated in the Self-Tender or sold into the market during the Self-Tender Period allegedly missed out on several "extraordinary" dividends that Polk issued after the 2011 Self-Tender and before the 2013 sale.[20]

According to the Plaintiffs, in the years preceding the Self-Tender, Polk had explored transactions that valued the Company above the Self-Tender valuation, and that were designed to eliminate non-Polk Family members. For example, in 2008, Polk allegedly explored a potential self-tender at $850 per share.[21] Likewise, in 2010, the Company explored a potential short-form merger that would have

---

[17] *Buttonwood*, 2017 WL 3172722, at *4.
[18] *Id.* at *5.
[19] *Id.*
[20] *Id.*
[21] *Id.* at *2.

eliminated minority stockholders.[22]  According to the Plaintiffs, these earlier explorations indicate that it was the Defendants' plan all along to eliminate non-Polk Family members at a depressed valuation before selling the Company for much more.[23]

The Plaintiffs contend that the Company's Offer to Purchase for Cash (the "Offer To Purchase"), made in connection with the 2011 Self-Tender, was materially misleading because it failed to disclose certain details relating to the 2008 self-tender explorations or the 2010 short-form merger explorations.[24]  The Plaintiffs contend that, by omitting these details, the Offer To Purchase misled the Polk stockholders into believing that the Self-Tender "was a unique and rare opportunity for liquidity at above market prices," when in fact the Polk Family planned to sell the Company at a much greater valuation.[25]  The Plaintiffs thus seek to hold the Defendants liable for breaches of their duty of loyalty (or care) in connection with the inadequate disclosures in way of the Offer To Purchase.[26]  They seek, primarily, approximately $62 million in rescissory damages related to the alleged misleading disclosures.[27]

---

[22] *Id.* at *2–3.
[23] Opening Br. Supp. Pls.' Mot. Certification Pl. Class Def. Class, Dkt. No. 294 at 9–12 [hereinafter "Pls.' OB"].
[24] *Id.* at 9–11.
[25] *Id.* at 11–12.
[26] SAC ¶¶ 102–18.
[27] Pls.' OB at 12, 22, 34.

*C. Procedural History*

The Plaintiffs filed their Second Amended Complaint on December 19, 2016.[28] On July 24, 2017, I denied motions to dismiss brought by the Polk Family and the Polk Family Directors because it was reasonably conceivable that they formed a control group and that the Self-Tender was a self-dealing transaction subject to entire fairness review.[29] I also dismissed claims against the Polk directors who were not members of the Polk Family and aiding and abetting claims against Polk's third-party advisors.[30] The parties then proceeded to discovery.[31]

On November 11, 2021, the Plaintiffs filed the instant motion for class certification (the "Motion"), seeking to certify both a plaintiff class and a defendant class.[32] The Defendants opposed class certification on January 11, 2022,[33] and the Plaintiffs filed a reply brief in support of class certification on February 9, 2022.[34] I held oral argument on March 17, 2022, and I consider the matter fully submitted as of that date.

---

[28] *See generally* SAC.

[29] *Buttonwood*, 2017 WL 3172722, at *6–7.

[30] *Id.* at *7–11.

[31] *See generally*, *Buttonwood Tree Value Partners, L.P. v. R. L. Polk & Co.*, 2021 WL 3237114 (Del. Ch. July 30, 2021).

[32] *See* Pls.' Mot. Certification Pl. Class Def. Class., Dkt. No. 294.

[33] *See* Defs.' Br. Opp. Pls.' Mot. Certification Pl. Class Def. Class, Dkt. No. 308 [hereinafter "Defs.' AB"].

[34] *See* Reply Br. Supp. Pls.' Mot. Certification Pl. Class Def. Class, Dkt. No. 313 [hereinafter "Pls.' RB"].

6

## II. ANALYSIS

### A. Legal Standard

The Motion seeks certification of a plaintiff class and a defendant class in this litigation. Class certification, which is governed by Court of Chancery Rule 23, is a two-step process. First, the putative class must meet all four criteria delineated in Rule 23(a), and second, it must meet one of the criteria within Rule 23(b).[35] "When appropriate[,] [] an action may be brought or maintained as a class action with respect to particular issues," or "a class may be divided into subclasses and each subclass treated as a class."[36]

The determination of whether to certify a class is a matter of this Court's discretion.[37] This Court must undertake a "rigorous analysis" in certifying a class, and "make an explicit determination on the record of the propriety of the class action according to the requisites of Rule 23(a) and (b)."[38] The Plaintiffs have the burden of satisfying the Rule 23 class certification requirements.[39] "Judicial interpretation of the Federal Rules respecting class actions . . . [is] persuasive authority for the interpretation of Court of Chancery Rule 23."[40]

---

[35] *In re Ebix, Inc. S'holder Litig.*, 2018 WL 3570126, at *1 (Del. Ch. July 17, 2018).

[36] Ct. Ch. R. 23(c)(4).

[37] *See In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 428 (Del. 2012) ("We review the Court of Chancery's determinations on Rule 23 class certification for abuse of discretion.").

[38] *Id.* at 432 (quoting *Prezant v. De Angelis*, 636 A.2d 915, 925 (Del. 1994)).

[39] *See Dieter v. Prime Comput., Inc.*, 681 A.2d 1068, 1071 (Del. Ch. 1996).

[40] *In re Countrywide Corp. S'holders Litig.*, 2009 WL 846019, at *12 n.84 (Del. Ch. Mar. 31, 2009). It is not, however, controlling. *See Straight Path*, 2022 WL 2236192, at *5.

I turn first to the proposed plaintiff class.

## B. *The Plaintiff Class*

The Plaintiffs seek to certify a plaintiff class that is defined as follows:

> all shareholders that tendered (and to the extent they tendered) shares into the Self-Tender, or who sold their shares (and to the extent they sold shares) into the market from the dissemination of the Offer To Purchase on March 31, 2011 until the close of the Self-Tender on May 16, 2011, and who have been harmed by Defendants' actions . . . .[41]

Although the Defendants challenge nearly every element of Rule 23(a) and (b), one common theme runs throughout their opposition. According to the Defendants, each member of the plaintiff class will have to prove reliance, causation, and damages on an individualized basis, and those individualized issues are purportedly fatal to several requirements of Rule 23.[42] Because the Defendants assert this argument with respect to several elements of class certification, I address it at the outset.

The Defendants' position that each plaintiff class member will have to prove reliance, causation, and damages has some support in Delaware case law. In *Malone v. Brincat*, our Supreme Court held that "[a]n action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder

---

[41] Proposed Order, Dkt. No. 294 ¶ 2 [hereinafter the "Proposed Order"].
[42] *See* Defs.' AB at 21–23, 29–30.

8

action does not include the elements of reliance, causation, and actual quantifiable monetary damages."[43]  Delaware courts have characterized this rule as establishing "per se" damages for breaches of the duty of disclosure.[44]

But in subsequent Supreme Court opinions, culminating in *Dohmen v. Goodman*, our Supreme Court has clarified that this "per se damages rule" for breaches of the duty of disclosure "presumes only nominal damages" and "does not extend to compensatory damages."[45]  "[T]o recover compensatory damages," the *Dohmen* Court explained, "an investor who proves a breach of the fiduciary duty of disclosure must prove reliance, causation, and damages."[46]

The Defendants therefore argue that the Plaintiffs' duty of disclosure claim here, which seeks approximately $62 million in damages,[47] will necessarily involve individual questions of reliance, causation, and damages that are fatal to several class certification requirements.  For example, the Defendants point to evidence that Mitchell, a proposed class representative, sold only a small portion of its Polk stock in a private transaction during the Self-Tender Period because of "liquidity considerations,"[48] which could suggest that it did not rely on the allegedly misleading Offer To Purchase.

---

[43] 722 A.2d 5, 12 (Del. 1998).
[44] *See Dohmen v. Goodman*, 234 A.3d 1161, 1168 (Del. 2020).
[45] *See id.* at 1168.
[46] *Id.* at 1175.
[47] *See* Pls.' OB at 12, 22, 34.
[48] Defs.' AB at 13, 26.

The Defendants *may* ultimately be correct that, to recover rescissory damages,[49] each plaintiff class member will have to prove reliance, causation, and damages on an individualized basis.[50]  But the Plaintiffs' request for relief here is broader than just rescissory damages.  In particular, the Second Amended Complaint seeks "damages, including rescissory damages," and "other and further equitable relief as this Court may deem just and proper."[51]  That is broad enough to include nominal damages under *Malone*'s "per se" damages rule for breaches of the duty of disclosure.[52]

Accordingly, even if the Defendants here are correct that this matter will involve individualized questions relating to reliance, causation, and damages, those questions would be relevant only to the Plaintiffs' request for ultranominal[53] damages.  But they are not relevant to the first order question of whether the Defendants breached their duty of disclosure—or whether they owe corresponding nominal damages.

---

[49] The Plaintiffs' primary request for relief seeks rescissory, not compensatory, damages.  *See* Pls.' RB at 11, 20, 24–25.  Unlike the latter, rescissory damages are the equivalent in restitution of equitable recission.  I make no determination here whether the *Dohmen* analysis requires individual proof of entitlement to rescissory damages, which—unless I find liability for breach of duty—would be advisory at this stage.

[50] I note that, although *Dohmen* requires investors seeking compensatory damages to prove reliance, causation, and damages in a breach of duty of disclosure claim, it did not consider whether such proof could, or could not, be established on a class-wide basis.

[51] SAC at 67–68.

[52] *Malone*, 722 A.2d at 12.

[53] *See supra* note 49.

10

I therefore consider the Plaintiffs' request for class certification only with respect to that first order question at this time.[54]  As discussed below, I find that the Plaintiffs meet the Rule 23 class certification requirements with respect to the issue of breach.  If the Plaintiffs succeed in proving that the Defendants breached their duty of disclosure, I will revisit class certification with respect to the Plaintiffs' request for ultranominal damages, and this matter will proceed to a separate damages trial accordingly.[55]

### 1. The Proposed Plaintiff Class Satisfies Rule 23(a)

Under Rule 23(a), four elements must be satisfied:  "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."[56]  I address each in turn.

#### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[57]  "The test is not whether joinder of all the putative class members would be impossible, but whether joinder would be practical."[58]

[54] Ct. Ch. R. 23(c)(4) ("When appropriate[,] [] an action may be brought or maintained as a class action with respect to particular issues.").

[55] *See* Ct. Ch. R. 42(b) ("The Court in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues.").

[56] *CME Grp., Inc. v. Chicago Bd. Options Exch., Inc.*, 2009 WL 1547510, at *4 (Del. Ch. June 3, 2009).

[57] Ct. Ch. R. 23(a)(1).

[58] *Marie Raymond Revocable Tr. v. MAT Five LLC*, 980 A.2d 388, 400 (Del. Ch. 2008), *aff'd sub nom. Whitson v. Marie Raymond Revocable Tr.*, 976 A.2d 172 (Del. 2009).

"A showing of 'strong litigational inconvenience' in the prosecution of claims by the proposed class members is sufficient."[59] In evaluating the numerosity requirement, the Court "is not controlled by strict numerical guidelines."[60] "Rather, the Court may consider a number of factors, including the geographical diversity of the members of the proposed class and the size of each claim."[61]

The Plaintiffs here assert that the proposed plaintiff class is composed of between 58 and 64 members who owned 36,349 Polk shares.[62] Those members include 57 Polk stockholders who tendered their shares in the Self-Tender, and between one and seven Polk stockholders who sold stock in private transactions during the Self-Tender Period.[63] The Defendants do not dispute that the proposed class definition encompasses between 58 and 64 people, but they seek to subtract certain stockholders who they contend are situated differently.

First, the Defendants contend that the class should exclude members of the Polk Family who tendered their shares, because, according to the Defendants, those family members "would also be in the proposed defendant class."[64] As discussed below, however, I decline to certify a defendant class in this matter.[65] But in any

---

[59] *Id.* (citation omitted).
[60] *Marhart, Inc. v. CalMat Co.*, 1992 WL 82365, at *4 (Del. Ch. Apr. 22, 1992).
[61] *Id.*
[62] Pls.' OB at 22–23.
[63] *Id.* at 14–15.
[64] Defs.' AB at 17.
[65] *See infra* § II.C.

12

event, the Plaintiffs specifically excluded stock tendered by Polk Family members from their proposed defendant class.[66] The Defendants are therefore wrong to suggest that including those Polk Family members in the plaintiff class would "[c]ount[] them on both sides."[67]

Second, the Defendants contend that the class should exclude, or separate into a subclass, the stockholders who sold their stock in private transactions during the Self-Tender Period instead of participating in the Self-Tender.[68] According to the Plaintiffs, between one and seven members of the proposed class fall into this category.[69] The Defendants contend that these stockholders should be excluded from the class, because their claims are purportedly subject to unique "elements and defenses"—in particular, related to reliance, causation, and damages.[70] But as I explained above, any unique reliance, causation, and damages arguments are relevant only to the Plaintiffs' request for ultranominal damages; they are not relevant to the issue of whether the Defendants breached their duty of disclosure. Because this Memorandum Opinion addresses class certification only with respect to the issue of breach, I find no reason to exclude those seven stockholders from the proposed class at this time.

---

[66] Pls.' OB at 17 ("Shares of Polk owned by [the Polk Trusts] that were tendered into the Self-Tender are included in the Plaintiff Class and are not included in the Defendant Class.").
[67] See Defs.' AB at 17.
[68] See id. at 17–18.
[69] Pls.' OB at 14–15.
[70] Defs.' AB at 17–18.

I therefore accept the Plaintiffs' assertion that the proposed plaintiff class is composed of between 58 and 64 stockholders. "Numbers in a proposed class in excess of forty have sustained the numerosity requirement, and classes with a[s] few as twenty-three members have been upheld."[71] This Court "is reluctant to deny certification on grounds of numerosity where the plaintiff class is within the size typically certified by our courts."[72] Moreover, when the putative class is composed of stockholders, "it is reasonably inferable that not all of them own sufficient stock to make an individual action economically viable."[73] I am satisfied that the proposed plaintiff class of between 58 and 64 stockholders meets Rule 23(a)(1)'s numerosity requirement.

*b. Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."[74] The commonality requirement is met "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."[75] Commonality is not defeated merely because "the class members may have 'different interests and views,'" "so

---

[71] *Dubroff v. Wren Holdings, LLC*, 2010 WL 3294219, at *5 (Del. Ch. Aug. 20, 2010).

[72] *Id.*

[73] *Marhart*, 1992 WL 82365, at *4 (class of "more than 25" stockholders satisfied numerosity requirement).

[74] Ct. Ch. R. 23(a)(2).

[75] *Marie Raymond*, 980 A.2d at 400 (quoting *Leon N. Weiner & Assocs., Inc. v. Krapf*, 584 A.2d 1220, 1225 (Del. 1991)).

14

long as the common legal questions are not dependent on divergent facts and significant factual diversity does not exist among individual class members."[76]

The Plaintiffs here allege that the Defendants breached their duty of disclosure to Polk stockholders in connection with the Self-Tender.[77]  Indeed, the Defendants concede in their Opposition that "there is a common question of whether there was a material omission from the Offer [T]o Purchase."[78]  The Defendants nonetheless contend that the Plaintiffs fail to establish commonality because each class member supposedly "must individually prove reliance, causation, and damages."[79]

The Defendants are correct that this Court has found a lack of common questions in duty of disclosure cases where "reliance, causation, and damages will need to be individually established."[80]  But as I have explained above, those questions are relevant only to a request for ultranominal damages,[81] and I am considering class certification only with respect to the issue of breach and corresponding nominal damages at this time.  With respect to the issue of breach, the Defendants "either did or did not breach their fiduciary duty of disclosure to all

---

[76] *In re Philadelphia Stock Exch., Inc.*, 945 A.2d 1123, 1141 (Del. 2008) (citation omitted).
[77] SAC ¶¶ 102–18.
[78] Defs.' AB at 20.
[79] *Id.* at 21.
[80] *Dubroff*, 2010 WL 3294219, at *6.
[81] *See supra* note 49.

or none of the [Polk] stockholders in the Proposed Class."[82]  That is sufficient to satisfy Rule 23(a)(2)'s commonality requirement.

### c. Typicality

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class."[83]  "The test of typicality is that the legal and factual position of the class representative must not be markedly different from that of the members of the class."[84]  That is, if "the proposed class representative's claims require more or less proof than would be required by the claims of other members of the class, class certification is unavailable."[85] "Typicality is generally deemed satisfied if the representative's claim or defense 'arises from the same event or course of conduct that gives rise to the claims [or defenses] of other class members and is based on the same legal theory.'"[86]  But "a proposed class representative may not be typical if he is potentially subject to unique defenses not applicable to other class members," or "if a conflict or a potential conflict exists between the legal and factual positions of the proposed class representative and class members."[87]

---

[82] *See Turner v. Bernstein*, 768 A.2d 24, 31 (Del. Ch. 2000).
[83] Ct. Ch. R. 23(a)(3).
[84] *New Jersey Carpenters Pension Fund v. infoGROUP, Inc.*, 2013 WL 610143, at *3 (Del. Ch. Feb. 13, 2013) (quoting *Weiner*, 584 A.2d at 1225).
[85] *Id.* (quoting *Paine Webber R&D Partners v. Centocor, Inc.*, 1997 WL 719096, at *5 (Del. Super. Ct. Oct. 9, 1997)).
[86] *Id.* (quoting *In re Best Lock Corp. S'holder Litig.*, 845 A.2d 1057, 1092 (Del. Ch. 2001)).
[87] *Id.*

The Plaintiffs here propose two representative plaintiffs: Buttonwood and Mitchell.[88] The Defendants first contend that both Buttonwood's and Mitchell's claims are subject to unique elements and defenses that render them atypical—namely, they purportedly must prove reliance, causation, and damages individually.[89] Relatedly, the Defendants contend that Mitchell's claim is atypical because it sold "only a small potion of its holdings" for "liquidity considerations," in contrast to class members who tendered all their shares.[90] At the damages phase, these arguments may prove prescient. But they are not relevant to the issue of whether the Defendants breached their duty of disclosure and owe corresponding "per se" nominal damages—the subject of this Memorandum Opinion. I therefore decline to find a lack of typicality based on potential individualized questions of reliance, causation, and damages.

The Defendants next argue that Buttonwood is subject to atypical defenses because it supposedly "no longer exists."[91] Specifically, Buttonwood was a California limited partnership that filed a "certificate of cancellation" with the California Secretary of State in October 2020.[92] The parties disagree regarding whether Buttonwood may still pursue this litigation, for the purpose of winding up,

---

[88] Pls.' OB at 12–13.
[89] Defs.' AB at 22–23.
[90] *Id.* at 25–26.
[91] *Id.* at 3, 23–25.
[92] *See supra* note 9 and accompanying text.

after cancelling its existence. As discussed below, I find that Buttonwood may still pursue this litigation as part of its winding up process, despite having filed a certificate of cancellation.

The California Corporations Code (the "Code"), which governs corporations, limited liability companies ("LLCs"), and limited partnerships, does not specify whether limited partnerships may pursue litigation for the purpose of winding up after cancellation. The Code provides that a limited partnership "is dissolved, and its activities must be wound up" "after the dissociation of a person as a general partner" "if the limited partnership does not have a remaining general partner," subject to certain exceptions.[93] The parties do not dispute that Buttonwood was dissolved after the passing of its founder in late 2016.

After dissolution, the Code provides that "[a] limited partnership continues . . . only for the purpose of winding up its activities."[94] The Code provides the following list of activities in which a limited partnership may engage during the winding up process:

> (b) In winding up its activities, the limited partnership:
>
>> (1) may amend its certificate of limited partnership to state that the limited partnership is dissolved, preserve the limited partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings,

---

[93] CAL. CORP. CODE § 15908.01(c)(2).
[94] Id. § 15908.03(a).

18

whether civil, criminal, or administrative, transfer the limited partnership's property, settle disputes by mediation or arbitration, file a certificate of cancellation as provided in Section 15902.03, and perform other necessary acts; and

(2) shall discharge the limited partnership's liabilities, settle and close the limited partnership's activities, and marshal and distribute the assets of the partnership.[95]

Contending that the winding up process ends with the certificate of cancellation, the Defendants insert the phrase "and then" in brackets in front of "file a certificate of cancellation," and replace with ellipses all the activities that the Code lists after "file a certificate of cancellation":

The California Corporation Code . . . provides that, after a limited partnership dissolves, it may wind up its activities and, in doing so, may 'prosecute and defend actions and proceedings, whether civil, criminal, or administrative . . . [and then] file a certificate of cancellation as provided in Section 15902.03 . . . .'"[96]

The Defendants thus seek to add a temporal qualifier—"and then"—to the filing of the certificate of cancellation that is not present in the statute. That is not how I read the statute. Instead, it merely lists the activities that are included in the winding up process; it does not mandate the order in which those activities must be undertaken.

---

[95] *Id.* § 15908.03(b).
[96] Defs.' AB at 24 (quoting CAL. CORP. CODE § 15908.03(b)(1)).

The Defendants also point to the section of the Code that describes how certificates of cancellation must be filed as evidence that cancellation terminates the winding up process. That section of the Code provides as follows: "A dissolved limited partnership that has completed winding up shall deliver to and on a form prescribed by the Secretary of State for filing a certificate of cancellation."[97] According to the Defendants, the phrase "that has completed winding up" suggests that cancellation can only occur after winding up. I disagree. It is true that the Code requires "a limited partnership that has completed winding up" to file a certificate of cancellation. But nowhere does the Code prohibit the filing of a certificate of cancelation earlier, before winding up is complete. I do not read this section of the Code as prohibiting a limited partnership from continuing to undertake winding up activities, including prosecuting litigation, after filing its certificate of cancellation.

Finally, the Defendants note that the certificate of cancellation filed by Buttonwood states that upon cancellation, "its powers, rights and privileges will cease in California."[98] This phrase is consistent with the form certificate of cancellation provided by the California Secretary of State, which includes the following statement: "Upon the effective date of this Certificate of Cancellation, the

---

[97] CAL. CORP. CODE § 15902.03.
[98] *See* Buttonwood Cert. Cancellation at 1.

20

Limited Partnership's registration is cancelled and its powers, rights and privileges will cease in California."[99]

I note that the Code does not require the certificate of cancellation to include this language. To the contrary, the Code merely requires the certificate of cancellation to include "the name of the limited partnership and the Secretary of State's file number," "the date of filing of its initial certificate of limited partnership," and "any other information as determined by the general partners."[100] Nevertheless, the Code does require the certificate of cancellation to be "on a form prescribed by the Secretary of State,"[101] and the Secretary of State has prescribed a form stating that upon cancellation, "the Limited Partnership's . . . powers, rights and privileges will cease in California."[102]

The inclusion of this language on Buttonwood's certificate of cancellation does not end my analysis, however. Although the Code is silent with respect to the powers of limited partnerships after cancellation, it is not silent with respect to California corporations and LLCs. The Code requires California LLCs to file a certificate of cancellation stating that upon cancellation, the "limited liability company shall be cancelled and its powers, rights, and privileges shall cease."[103]

[99] SEC'Y OF STATE BUS. PROGRAMS DIV., CERTIFICATE OF CANCELLATION LTD. P'SHIP (LP) LP-4/7 (Mar. 2022), https://bpd.cdn.sos.ca.gov/lp/forms/lp-4-7.pdf.
[100] CAL. CORP. CODE § 15902.03.
[101] Id.
[102] See supra note 99 and accompanying text.
[103] CAL. CORP. CODE § 17707.02(c).

21

Likewise, the Code requires California corporations to file a certificate of dissolution stating that upon dissolution, "the corporate powers, rights, and privileges of the corporation shall cease."[104]

Even though the Code provides that the "powers, rights, and privileges" of LLCs and corporations cease upon cancellation or dissolution, the Code carves out exceptions for the prosecution of litigation. Specifically, the Code provides that "[a] limited liability company that has filed a certificate of cancellation nevertheless continues to exist for the purpose of," among other things, "prosecuting and defending actions by or against it in order to collect and discharge obligations."[105] The Code features a similar carveout for corporations: "A corporation which is dissolved nevertheless continues to exist for the purpose of," among other things, "prosecuting and defending actions by or against it and enabling it to collect and discharge obligations."[106]

By analogy, I conclude that California limited partnerships such as Buttonwood are subject to a similar carveout that allows them to continue to exist after cancellation for the purpose of "prosecuting and defending actions by or against it in order to collect and discharge obligations,"[107] notwithstanding the language in

---

[104] *Id.* § 1905(b).
[105] *Id.* § 17707.06(a).
[106] *Id.* § 2010(a).
[107] *See id.* § 17707.06(a).

22

the limited partnership cancellation form stating that their "powers, rights and privileges will cease in California."[108]  Although there appears to be no case law squarely addressing whether a California limited partnership continues to exist for the purposes of pursuing litigation after filing a certificate of cancellation, my conclusion is buttressed by language from *Ose Properties, Inc. v. Priest*, in which the California Court of Appeals opined that a certificate of cancellation does not "deprive [a limited partnership] or its successor in interest from collecting on the judgment which is part of winding up the affairs of the partnership."[109]

Accordingly, I conclude that Buttonwood continues to exist for the purpose of pursuing this litigation, and it is thus not subject to an atypical defense regarding its existence.  The Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### d. Adequacy

Under Rule 23(a)(4), I must determine that the proposed plaintiff class representatives and their counsel "will fairly and adequately protect the interests of the class."[110]  The adequacy requirement "attempts to ensure that the class representative has proper incentives to advance the interests of the class," and

---

[108] *See supra* note 99 and accompanying text.
[109] 2017 WL 4294069, at *6 (Cal. Ct. App. Sept. 28, 2017).
[110] Ct. Ch. R. 23(a)(4).

"speaks to alignment of interests" among the named and unnamed class members.[111]
The class representative need not be "the best of all representatives, but [rather] one who will pursue a resolution of the controversy in the interests of the class."[112]

Delaware courts have articulated a three-part test to establish the adequacy of the class representatives. First, the representative's interests must not be "antagonistic to the class."[113] Second, the plaintiffs must retain "competent and experienced counsel to act on behalf of the class."[114] Finally, the class representatives must "possess a basic familiarity with the facts and issues involved in the lawsuit."[115] Delaware courts "generally accord the greatest weight to the presence or absence of conflicts of interest or economic antagonism when evaluating a lead plaintiff's adequacy."[116] "[P]urely hypothetical, potential, or remote conflicts of interest," however, "never disable the individual plaintiff."[117]

The Defendants do not challenge the adequacy of the Plaintiffs' counsel, who I find manifestly adequate. The Defendants contend, however, that Buttonwood and Mitchell are both inadequate class representatives.

---

[111] *In re Celera Corp. S'holder Litig.*, 2012 WL 1020471, at *14 (Del. Ch. Mar. 23, 2012), *aff'd in relevant part, rev'd in part*, 59 A.3d 418 (Del. 2012).
[112] *Price v. Wilmington Tr. Co.*, 730 A.2d 1236, 1238 (Del. Ch. 1997) (quoting *Ross v. A.H. Robins Co.*, 100 F.R.D. 5, 6 (S.D.N.Y. 1982)).
[113] *In re Fuqua Indus., Inc. S'holder Litig.*, 752 A.2d 126, 127 (Del. Ch. 1999).
[114] *Id.*
[115] *Id.*
[116] *Celera*, 2012 WL 1020471, at *14.
[117] *Id.* (quoting *Youngman v. Tahmoush*, 457 A.2d 376, 380 (Del. Ch. 1983)).

24

First, the Defendants contend that because Mitchell sold only a small portion of its shares in a private transaction during the Self-Tender Period, it is an inadequate representative of the class members who tendered their stock.[118] As I explained above, however, this factual distinction between Mitchell and members of the plaintiff class who tendered their shares is only relevant to the issues of reliance, causation, and damages, on which I have reserved judgment. With respect to the issue of breach, and corresponding nominal damages, Mitchell is situated identically to all members of the class who received the allegedly misleading Offer To Purchase. Moreover, with respect to those shares it sold, its incentives are aligned with the class. I therefore find that, at least with respect to the issue of whether the Defendants breached their duty of disclosure, Mitchell is an adequate class representative.

Second, the Defendants argue that Buttonwood is an inadequate class representative, both because it supposedly "no longer exists," and also because Buttonwood's representative, Philip Milner, purportedly "lacks even the most basic familiarity with the facts of the case and Buttonwood's investment in the Company."[119] I have already held above that Buttonwood does exist for the purposes of pursuing this litigation.[120]

---

[118] Defs.' AB at 28.
[119] *Id.* at 27–28.
[120] *See supra* § II.B.1.c.

With respect to Milner's familiarity with this case, "[i]t is a well-settled legal principle that class representatives are not required to fully understand the nuances of the legal theories underlying each of their claims."[121] The adequacy element requires nothing more than "a rudimentary understanding of the claims, facts, and issues."[122] According to the Defendants, Milner has minimal knowledge of the Self-Tender, Buttonwood's relevant transactions in Polk stock, or its communications with the Company regarding the Self-Tender.[123] The Defendants also contend that Milner only became familiar with the litigation a few months before being deposed in this matter in connection with class certification, and that he conducted no "independent investigation of the facts or claims" and did not know "what would be involved if Buttonwood were designated as a class representative."[124]

A review of Milner's deposition transcript reveals, however, that the Defendants' position is entirely misplaced; Milner has the requisite understanding of this action, and of Buttonwood's role as a class representative. Milner testified that he has communicated on a periodic basis with Plaintiffs' counsel "over the course of years that this action was pending."[125] The liquidating partner then

---

[121] *O'Malley v. Boris*, 2001 WL 50204, at *5 (Del. Ch. Jan. 11, 2001).
[122] *Id.*
[123] Defs.' AB at 27–28.
[124] *Id.*
[125] Milner Dep. at 65:12–66:14; *see also id.* at 195:3–5, 208:14–209:19.

formally asked Milner to serve as Buttonwood's representative in this litigation after Buttonwood was required to make a Rule 30(b)(6) witness available to the Defendants.[126] Milner thereafter worked with the Plaintiffs' counsel to review the filings, including the operative complaint, and familiarize himself with the facts and theory of this case.[127] At his deposition, Milner cogently articulated the Plaintiffs' theory of this case.[128] Milner also testified to a general understanding of Buttonwood's role and responsibilities as a class representative.[129] This Court has previously found class representatives to be adequate despite having little to no knowledge of the facts of the case at the outset of the litigation.[130] I find Milner's familiarity with this action sufficient to satisfy Rule 23(a)(4)'s adequacy requirement.

Accordingly, the Plaintiffs have met their burden of establishing that Mitchell and Buttonwood are adequate class representatives. Having determined that the proposed Plaintiff class meets the criteria of Rule 23(a), I turn to Rule 23(b).

---

[126] *Id.* at 15:22–16:5, 52:14–56:6, 57:17–58:6, 204:12–205:1.
[127] *Id.* at 34:23–35:6, 61:16–62:4, 85:12–86:5, 92:10–15.
[128] *Id.* at 92:16–23; *see also id.* at 67:9–68:8, 74:24–75:16, 80:6–81:1, 169:10–170:17, 176:11–24, 179:13–180:12, 182:3–12.
[129] *See id.* at 197:6–16.
[130] *See Kahn v. Household Acquisition Corp*, 1982 WL 8778, at *3–6 (Del. Ch. Jan. 19, 1982); *see also Fuqua*, 752 A.2d at 134–37.

## 2. The Proposed Plaintiff Class Satisfies Rule 23(b)

Court of Chancery Rule 23(b) "divides class actions into three categories."[131] Subdivision (b)(1) "applies to class actions that are necessary to protect the party opposing the class or members of the class from inconsistent adjudications in separate actions."[132] Subdivision (b)(2) "applies to class actions for class-wide injunctive or declaratory relief."[133] Subdivision (b)(3) "applies when common questions of law or fact predominate and a class action would be superior to other means of adjudication."[134]

The Plaintiffs here seek to certify the plaintiff class pursuant to Rule 23(b)(1) and Rule 23(b)(2).[135] Rule 23(b)(1) is satisfied if:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.][136]

---

[131] *Nottingham Partners v. Dana*, 564 A.2d 1089, 1095 (Del. 1989).
[132] *Celera*, 59 A.3d at 432 (quoting *Nottingham*, 564 A.2d at 1095).
[133] *Id.* (quoting *Nottingham*, 564 A.2d at 1095).
[134] *Id.* (quoting *Nottingham*, 564 A.2d at 1095).
[135] Pls.' OB at 28–31.
[136] Ct. Ch. R. 23(b)(1).

Rule 23(b)(2) is satisfied if:

> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.][137]

As our Supreme Court has recognized, Delaware courts "repeatedly have held that actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)."[138] This is true with respect to duty of disclosure claims, including duty of disclosure claims that seek damages.[139]  Indeed, in *Turner v. Bernstein*, this Court certified a plaintiff class that sought rescissory damages under Rule 23(b)(1)(A) and (B).[140] The Court held that the requirements of Rule 23(b)(1) are satisfied where the case involves "one set of actions by defendants creating a uniform type of impact upon the class of stockholders."[141]  The Court found that standard was applicable in the duty of disclosure context because

> (1) the defendant-directors either did or did not breach their fiduciary duty of disclosure to all or none of the . . . stockholders in the Proposed Class; (2) if the defendant-directors did commit such a breach (as I have held), there is no requirement that any member of the Proposed Class have actually relied upon such breach in

---

[137] Ct. Ch. R. 23(b)(2).

[138] *Celera*, 59 A.3d at 432–33 (quoting *In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *8 (Del. Ch. May 6, 2010), *aff'd*, 9 A.3d 475 (Del. 2010)).

[139] *Turner*, 768 A.2d at 30–37.

[140] *Id.*

[141] *Id.* at 31 (quoting *In re Mobile Commc'ns Corp. of Am., Inc., Consol. Litig.*, 1991 WL 1392, at *16 (Del. Ch. Jan. 7, 1991), *aff'd*, 608 A.2d 729 (Del. 1992)).

order to benefit from a remedy; and (3) thus any monetary remedy due to the Proposed Class will be calculated on a per share, rather than per shareholder, basis.[142]

The *Turner* Court relied on *Malone* for the proposition that the plaintiffs did not need to prove reliance to receive damages.[143] As discussed above, the holding in *Malone* that stockholders are entitled to "per se" damages for breaches of the duty of disclosure has since been narrowed by the Supreme Court, in *Dohmen*, to apply to nominal damages.[144] Accordingly, the *Turner* Court's conclusion that "there is no requirement that any member of the Proposed Class have actually relied upon such breach" may prove inapposite at the ultranominal damages phase of this litigation.[145] As explained above, however, I have reserved judgment regarding class certification on the issue of ultranominal damages.

With respect to class certification for the issue of breach and corresponding "per se" nominal damages, the *Turner* Court's reasoning remains compelling. As in *Turner*, the Defendants here either did or did not breach their duty of disclosure, and if they did, they owe "per se" nominal damages to the plaintiff class under *Malone* and *Dohmen*, without having to prove reliance or causation. Whether the Defendants breached their duty of disclosure and owe corresponding nominal damages thus

---

[142] *Id.*
[143] *Id.* (citing *Malone*, 722 A.2d at 12).
[144] *See supra* notes 43–46 and accompanying text.
[145] *See supra* note 49.

involves "one set of actions by defendants creating a uniform type of impact upon the class of stockholders."[146]

Accordingly, I find that the proposed plaintiff class meets the requirements for certification under of Rule 23(b)(1), at least with respect to the issue of breach and nominal damages. Because I certify the plaintiff class under Rule 23(b)(1), I need not consider whether the class separately meets the criteria of Rule 23(b)(2). I therefore turn to the proposed defendant class.

### C. The Defendant Class

The Plaintiffs seek to certify a defendant class defined as follows:

> all Polk Family members to the extent [Polk shares] owned directly or beneficially by them were: (a) controlled by a Polk Director, (b) were part of the control block of Polk shares directed by a Polk Director, (c) supported the actions of the Polk Directors or (d) benefitted from the actions of the Polk Directors challenged herein.[147]

The Plaintiffs have excluded from the proposed defendant class Polk stock "owned by the [Polk Trusts] that were tendered into the Self-Tender."[148] The Plaintiffs seek to name Stephen Polk as the class representative for the defendant class.[149]

---

[146] *Turner*, 768 A.2d at 31 (quoting *Mobile*, 1991 WL 1392, at *16).
[147] Proposed Order ¶ 5.
[148] *Id.*
[149] *Id.*

31

A party seeking to certify a defendant class must meet the same requirements of Rule 23(a) and (b) that are required of a plaintiff class.[150] But "the creation of defendant classes raises due process concerns not encountered when the designation of a plaintiff class is sought."[151] "The crux of the distinction is[ that] the unnamed plaintiff stands to gain while the unnamed defendant stands to lose."[152] Therefore, "[b]efore certifying a defendant class, the court must carefully examine the impact of such certification on the rights of unnamed class members."[153] Courts are reluctant to certify a defendant class absent a "sufficient showing of necessity."[154]

The Plaintiffs have failed to demonstrate that the proposed defendant class meets the requirements of Rule 23(a). First, the Plaintiffs have failed to demonstrate that Stephen Polk is an adequate class representative. As I discussed above, Rule

---

[150] *See* Ct. Ch. R. 23 ("[o]ne or more members of a class may sue *or be sued* as representative parties on behalf of all only if" the elements of Rule 23(a) and (b) are satisfied) (emphasis added)); *see also Weiner*, 584 A.2d at 1223 (examining certification of a defendant class by reference to Rule 23(a) and (b) criteria).

[151] *Follette v. Vitanza*, 658 F. Supp. 492, 507 (N.D.N.Y. 1987) ("The reluctance of many courts to certify defendant classes is rooted in the fact that the creation of defendant classes raises due process concerns not encountered when the designation of a plaintiff class is sought."), *modified sub nom. Follette v. Cooper*, 658 F. Supp. 514 (N.D.N.Y. 1987), *order vacated in part on other grounds*, 671 F. Supp. 1362 (N.D.N.Y. 1987); *see also Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198, 212 (Ala. 2003) ("Courts have recognized that certification of defendant class actions give rise to certain due-process concerns not found in plaintiff class actions."); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 292 (N.D. Cal. 1978) ("defendant class actions seem to demand greater attention to the due process rights of absent class members" and "are seldom certified"); *Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 374 (S.D.N.Y. 1984) ("[C]ertification of defendant classes is relatively rare. The creation of defendant classes raises due process issues not encountered in the context of plaintiff classes."), *aff'd*, 810 F.2d 336 (2d Cir. 1987).

[152] *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D. 668, 674 (N.D. Ill. 1983).

[153] *Akerman*, 609 F. Supp. at 375.

[154] *Flying Tiger Line, Inc. v. Cent. States, Sw. & Se. Areas Pension Fund*, 1986 WL 13366, at *4 (D. Del. Nov. 20, 1986).

23(a)(4)'s adequacy requirement mandates that the representative's interests must not be antagonistic to the class.[155] As a class representative, Stephen Polk would serve as a fiduciary to the unnamed defendant class members.[156] But Stephen Polk is also a fiduciary of the Polk Trusts, both of which participated in the Self-Tender and are included in the plaintiff class.[157] If appointed as the defendant class representative, Stephen Polk would therefore serve as a fiduciary of the defendant class while at the same time serving as a fiduciary via the Polk Trusts of certain plaintiff class members. That conflict renders him inadequate to serve as a class representative, particularly given the heightened due process concerns pertaining to defendant classes.

Second, the defendant class members each have individualized defenses that are fatal to class certification here. The Plaintiffs' theory is that the defendant class members, who were Polk stockholders and members of the Polk Family, formed a controlling stockholder group and breached their duty of disclosure in connection with the Offer To Purchase.[158] But to establish a control group, the Plaintiffs must

---

[155] *Fuqua*, 752 A.2d at 127.

[156] *See Steinhardt v. Howard-Anderson*, 2012 WL 29340, at *8 (Del. Ch. Jan. 6, 2012) ("class representatives 'act[ ] as fiduciaries on behalf of others'" (citation omitted)); *In re M & F Worldwide Corp. S'holders Litig.*, 799 A.2d 1164, 1174 n.34 (Del. Ch. 2002) ("[B]y asserting a representative role on behalf of a proposed class, representative plaintiffs and their counsel voluntarily accept a fiduciary obligation towards members of the putative class.").

[157] *See supra* note 16 and accompanying text.

[158] *See* Pls.' OB at 19–20 ("The members of the Polk Family Class through their *de facto* and/or *de jure* representative Stephen Polk (working with the other Polk family Directors) have acted in

show an "actual agreement" among the Defendant class members.[159] And to prevail on a claim for damages for a breach of the duty of disclosure, the Plaintiffs similarly must prove "a culpable state of mind or non-exculpated gross negligence" as to each defendant.[160] Indeed, in asserting that Stephen Polk's claims are typical of the unnamed class members, the Plaintiffs repeatedly assert that the defendant class members "agreed" to act as a control group and were uniformly "aware" of the breaches of fiduciary duty.[161]

As discussed above, I held at the motion to dismiss stage that it was reasonably conceivable that the "Polk Family . . . acted as a controlling stockholder."[162] I noted, however, that "given the Complaint's failure to break down the ownership structure of the 'Polk Family,' it is far from clear that all stockholders who are also relatives of the founder are members of a control block; nothing in this [motion to dismiss opinion] should be read to the contrary."[163] Therefore, despite my holding that it was "reasonably conceivable" that the "Polk Family" formed a control group, each

concert and agreed to control and dominate the affairs of Polk as a controlling shareholder block" and "knowingly supported and enabled the breaches of fiduciary duty alleged herein").

[159] *Sheldon v. Pinto Tech. Ventures, L.P.*, 220 A.3d 245, 252 (Del. 2019).

[160] *In re Wayport, Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013).

[161] *See* Pls.' OB at 19 ("Polk Family Class . . . have acted in concert and agreed to control and dominate the affairs of Polk as a controller shareholder block"); *id.* ("Polk Family Class" "were aware that disclosures to the Polk shareholders have referred to their group as the 'Polk family shareholders,' the 'Polk family' and the 'Family Investors'"); *id.* at 20 ("Polk Family Class" shared "goal of freezing out minority shareholders"); *id.* ("Polk Family Class" "knowingly supported and enabled the breaches of fiduciary duty alleged herein").

[162] *Buttonwood*, 2017 WL 3172722, at *6–7.

[163] *Id.* at *6.

stockholder who is also a relative of the Polk founder will have the opportunity at trial to demand that the Plaintiffs prove that he or she entered an "actual agreement" to form a control group. The claims against the putative defendant class are thus subject to individualized knowledge defenses with respect to each class member's participation in the alleged control group and each class member's "culpable state of mind" or "non-exculpated gross negligence" regarding the alleged disclosure violations.

At a minimum, these individualized defenses are fatal to Rule 23(a)(3)'s requirement that "the claims or defenses of" Stephen Polk as "the representative part[y] are typical of the claims or defenses of the [defendant] class."[164] As discussed above, "a proposed class representative may not be typical if he is potentially subject to unique defenses not applicable to other class members."[165] Although the Court articulated this rule statement in the context of plaintiff class representatives, the same principle is true with respect to defendant class representatives. In assessing typicality in the context of a defendant class, the court must "examine the status of the proposed class representative as compared to the nature of the class and the issues to be resolved."[166]

---

[164] Ct. Ch. R. 23(a)(3).
[165] *infoGROUP*, 2013 WL 610143, at *3.
[166] *United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 1993 WL 439109, at *1 (S.D.N.Y. Oct. 27, 1993) (discussing typicality under Fed. R. Civ. P. 23(a)(3)).

As the President, CEO and Chairman of Polk, Stephen Polk's liability for any breach of his duties of loyalty or care in connection with the allegedly misleading disclosures is presumably not dependent on finding that a control group existed and that it included every stockholder that is related to Polk's founder. The claims against the unnamed defendant class members who are alleged to have formed a "Polk Family" control group are therefore "subject to unique defenses" not applicable to the claims against Stephen Polk—namely, whether they reached an "actual agreement" to participate in the alleged control group and whether they possessed the requisite state of mind with respect to the misleading nature of the Offer To Purchase.[167]  Given the heightened due process concerns regarding defendant classes, I find these individualized questions sufficient to defeat typicality.

Accordingly, I find that Stephen Polk is not an adequate or typical representative for the proposed defendant class. I therefore decline to certify the defendant class. Although I need not consider whether the proposed defendant class satisfies the other requirements of Rule 23, I note that the individualized knowledge issues pertinent to each member of the putative defendant class may doom class certification under Rules 23(b)(1) and (b)(2) as well.[168]

---

[167] *See Real Est. All., Ltd. v. Sarkisian*, 2007 WL 2814591, at *3 (E.D. Pa. Sept. 24, 2007) (no typicality under Fed. R. Civ. P. 23(a)(3) where proposed defendant class representative's "knowledge . . . would not encompass the knowledge of the [other] proposed class members").
[168] *See Countrywide*, 2009 WL 846019, at *11 (certification under Rule 23(b)(1)(A) "requires a 'total absence of individual issues.'" (citation omitted)); *id.* ("'[C]lass actions usually meet both subparts of subsection (b)(1) of Rule 23 or neither of them,' as each focuses on the individuality

## III. CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion is GRANTED in part and DENIED in part. The parties should confer and submit a form of order consistent with this Memorandum Opinion.

---

of the actions belonging to the class members." (citation omitted)); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 220–21 (D.N.J. 2003) ("[I]f [Fed. R. Civ. P.] Rule 23(b)(2) ever permits [defendant class] certifications, then they are confined at least to those situations . . . in which individual members of the defendant class are all acting in furtherance of, or pursuant to, some uniform practice or policy or where the applicable theory of law otherwise renders individualized questions irrelevant to the determination of class-wide injunctive liability." (citations omitted)).